IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.  Civil No. 1:22cv217-HSO
Criminal No. 1:18cr28-HSO-JCG-3

JACK BENNY HALES

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT JACK BENNY HALES'S MOTION [131] UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

BEFORE THE COURT is Defendant Jack Benny Hales's Motion [131] under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. After due consideration of the parties' filings and relevant legal authority, the Court finds that Hales's Motion [131] should be denied.

I. BACKGROUND

On February 21, 2018, the Grand Jury returned a three-count Indictment [16], in which Defendant Jack Benny Hales ("Defendant" or "Hales") was charged on two counts. Indict. [16] at 1-2. Specifically, Count 1 charged Hales and his co-defendants with "knowingly and intentionally conspir[ing], with each other and others known and unknown to the Grand Jury, to possess with intent to distribute a mixture or substance containing a detectable amount of methamphetamine," in violation of 21 U.S.C. § 841(a)(1). *Id.* at 1. Count 3 charged that Hales, "aided and abetted by others known and unknown to the Grand Jury, did knowingly and

1

intentionally possess with intent to distribute 50 grams or more of a detectable amount of methamphetamine," in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. *Id.* at 2. Pursuant to a written Plea Agreement [56] with the Government, Hales pled guilty to Count 3 on May 10, 2018. Minute Entry, May 5, 2018.

Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR") [70] which concluded that Hales's total offense level under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") was 29. PSR [70] at 7. Pursuant to U.S.S.G. § 2D1.1(a), (c), his base offense level was determined to be 30 because he was "accountable for 102.3 grams of methamphetamine (Ice)." *Id.* Hales received a two-level enhancement under § 2D1.1(b)(5) because the offense involved the importation of methamphetamine. *Id.* The Probation Office determined that this enhancement was proper because the methamphetamine at issue "had a purity of 94.7%" and Drug Enforcement Administration ("DEA") agents "have advised that methamphetamine "Ice" with a purity level above 80% was likely imported into the United States" since "there are no known labs in the United States that can manufacture methamphetamine of this purity level." *Id.* Hales also received a three-level downward adjustment for acceptance of responsibility, resulting in a total offense level of 29. *Id.* Based on his criminal history category of V and the total offense level of 29, the Guidelines imprisonment range was 140 to 175 months. *Id.* at 18. Represented by counsel, Hales did not file any objections to the PSR [70]. Tr. [121] at 3.

On August 2, 2018, the Court sentenced Hales to a Guidelines-range term of imprisonment of 157 months, to be followed by 5 years of supervised release, a $5,000.00 fine, and a $100.00 special assessment. J. [73]. Count 1 was dismissed on motion by the Government. Minute Entry, Aug. 2, 2018. Neither Hales nor his counsel filed a direct appeal of the Judgment [73] within the time provided by the Federal Rules of Appellate Procedure.

Proceeding pro se, Hales filed a Motion [101] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 on August 6, 2019. Hales raised three grounds for relief in his Motion [101],[1] all asserting ineffective assistance of counsel: (1) failure by counsel to "conduct a meaningful investigation by which he would have discovered an [sic] plausible defense"; (2) failure to object to the drug purity level; and (3) "fail[ure] to do any meaningful pretrial investigation" before advising Hales to plead guilty. Mot. [101] at 4-8. In addition, Hales claimed that his counsel did not consult with him about filing an appeal. *Id.* at 9.

Pursuant to a Court Order [102], Hales's counsel at his plea and sentencing, Robert Harenski ("Harenski"), filed an Affidavit [103] responding to Hales's allegations. Of relevance here, Harenski acknowledged that he had not consulted with Hales regarding filing an appeal. Harenski stated that "it was not possible for

---

[1] Hales's Motion [101] listed four grounds, though Grounds Two and Four appeared to be duplicative. *See* Mot. [101] at 5 (Ground Two: asserting that counsel failed to object to the PSR regarding "insufficient evidence to support the Drug Quality Purity level"); *id.* at 8 (Ground Four: claiming that counsel "refused to object to the defendant's Drug Purity Level, which he knew their [sic] were [sic] no credible evidence to prove that the purity level was no more than regular methamphetamine").

3

Counsel and the Defendant to confer on this matter, as he was moved from the jail by the US Marshalls [sic] on the same day he was sentenced" and "it is almost impossible to get in touch with a defendant while they are awaiting Federal [Bureau of Prisons] designation and placement." Aff. [103] at 3-4.

Based on the Affidavit [103] and Hales's statements in his Reply [108] indicating that he wanted to file a direct appeal, the Court entered an Order [109] which granted in part Hales's Motion [101] to Vacate "to permit an out-of-time direct appeal," and dismissed his remaining claims without prejudice. Order [109] at 6-8; *see also* Text Only Order, Apr. 24, 2020 (reinstating the Judgment of Conviction [73] as of April 24, 2020, to permit Hales to file a notice of appeal); *United States v. West*, 240 F.3d 456, 459-60 (5th Cir. 2001) (noting that "pursuant to a § 2255 motion," a district court can reinstate a criminal judgment on the docket to "permit[] an out-of-time appeal when a defendant was denied assistance of counsel on appeal, through counsel's failure to perfect an appeal").

Hales then filed a direct appeal, Not. of Appeal [111], and new counsel was appointed, Order [113]. On appeal, Hales argued that his trial counsel rendered ineffective assistance by failing to object to the § 2D1.1(b)(5) enhancement. *United States v. Hales*, 844 F. App'x 784, 784 (5th Cir. 2021). The Fifth Circuit affirmed Hales's conviction and sentence on April 21, 2021, finding that the record was not sufficiently developed to consider his ineffective assistance of counsel claim on

4

direct appeal. *Id.* Hales did not petition for a writ of certiorari, and his conviction became final on September 18, 2021.[2]

On August 17, 2022,[3] Hales filed the present Motion [131] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, which raises only one ground for relief, that his trial counsel, Harenski, was ineffective for not objecting to the two-level increase under § 2D1.1(b)(5). Mot. [131] at 4. According to Hales, the § 2D1.1(b)(5) enhancement cannot be applied "based solely on the purity of the methamphetamine," and his attorney should have objected in light of this allegedly insufficient evidence. *Id.*

Pursuant to a Court Order [136], Harenski responded with an Affidavit [138], stating that he did not file an objection to the § 2D1.1(b)(5) enhancement because he "could not argue the purity of the methamphetamine in question, as a scientific lab test found the purity to be 94.7%," and he had no evidence to disprove the DEA agents' statements that methamphetamine with such purity levels must have been imported into the United States. Aff. [138] at 1-2. Moreover, he notes that he has objected to this enhancement in previous cases on the basis asserted by Hales with no success, and that he believed that raising such arguments in Hales's case could

---

[2] Because the Fifth Circuit issued its decision on Hales's appeal between March 19, 2020, and July 19, 2021, Hales had 150 days from the date of its judgment to file a petition for writ of certiorari. *See* Order, Supreme Court (Mar. 19, 2020) (extending the deadline to seek a writ of certiorari to 150 days from the date of the lower court judgment), https://www.supremecourt.gov/orders/courtorders/031920zr_d1o3.pdf; Order, Supreme Court (July 19, 2021), https://www.supremecourt.gov/orders/courtorders/071921zr_4g15.pdf (rescinding March 19, 2020 order but maintaining the 150 day extension for any "lower court judgment . . . issued prior to July 19, 2021"). Hales did not file such a petition, and his conviction became final at the expiration of those 150 days.

[3] Although the Motion [131] was not filed in ECF until August 22, 2022, Hales asserted that he placed it in the prison mailing system on August 17, 2022, and the Envelope [131-1] in which it was mailed to the Court is postmarked August 18, 2022. *See* Mot. [131] at 12; Envelope [131-1] at 1.

5

have resulted in the loss of acceptance of responsibility on the basis that the objection was meritless. *Id.* at 2.

The Government has filed a Response [139], arguing that Hales's Motion [131] should be denied because he has not shown deficient performance by Harenski or that he was prejudiced by any failure to object to the § 2D1.1(b)(5) enhancement. Resp. [139] at 3-6. Regarding deficient performance, the Government maintains that Hales has provided no evidence as to the source of the methamphetamine he was distributing or other proof to rebut the information in the PSR [70]. *Id.* at 3-5. Concerning prejudice, the Government asserts that Hales cannot show that any objection would have led to a different result because it would have been overruled and the Court stated at sentencing that it would have sentenced Hales to the same sentence even if the Guidelines were miscalculated. *Id.* at 5-6.

In his Reply [140],[4] Hales claims that "the PSR lent no support for the essential factual determination about where Mr. Hales' [sic] methamphetamine originated" because it relied on unsworn conclusions by DEA agents, and that, as a result, the PSR was an insufficient basis to apply the enhancement. Reply [140] at 3-4. He argues that his attorney should have known that PSR [70] was unreliable and challenged the enhancement, *id.* at 4, and that he has shown prejudice because his Guidelines range would have been lower without the enhancement, *id.* at 5-6.

---

[4] Along with Hales's Reply [140], he filed a Motion [141] that stated that he had not received Harenski's Affidavit [138] and requested that he be given additional time to respond to the Affidavit [138]. The Court granted Hales's Motion [141], *see* Text Only Order, May 15, 2023, and permitted him to file an additional response in order to address the Affidavit [138] on or before June 5, 2023. No additional response has been received by the Court.

6

II. DISCUSSION

A.   Legal standard

After a federal prisoner's conviction is final, there are four narrow and separate grounds upon which he may move to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255; *see also United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992).

"[O]n collateral attack, a defendant is limited to alleging errors of a 'constitutional or jurisdictional magnitude.'" *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (quoting *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (en banc)). Upon conviction and exhaustion of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164 (1982); *Shaid*, 937 F.2d at 231-32. Relief under 28 U.S.C. § 2255 is therefore reserved for violations of constitutional rights, and for a narrow range of injuries which could not have been raised on direct appeal which, if condoned, would result in a complete miscarriage of justice. *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

B.  <u>Whether Hales's counsel was ineffective for not objecting to the § 2D1.1(b)(5) enhancement</u>

1.  <u>Relevant standard</u>

Hales asserts that his counsel was ineffective because he did not object to the application of the two-level enhancement pursuant to § 2D1.1(b)(5).[5] Whether a convicted defendant's counsel was ineffective is governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* "First, the defendant must show that counsel's performance was deficient" by demonstrating that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* Prejudice occurs where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

---

[5] While the present Motion [131] is Hales's second § 2255 motion, it does not constitute a second or successive petition. *See In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998) ("[A] prisoner's application is not second or successive simply because it follows an earlier federal petition."). Hales has reasserted his claim of ineffective assistance of counsel based on a failure to object regarding insufficient evidence to support the § 2D1.1(b)(5) enhancement, Mot. [101] at 5, 8; Mot. [131] at 4, which was denied without prejudice and without an adjudication on the merits in the Court's Order [109] on his first Motion [101] to Vacate. Following the conclusion of his direct appeal, Hales was permitted to raise this claim without first seeking preapproval from the Fifth Circuit. *See United States v. Orozco-Ramirez*, 211 F.3d 862, 871 n.15 (5th Cir. 2000); *United States v. Brooks*, Crim. Action No. 08-74, 2010 WL 5071118, at *2-3 (W.D. La. Dec. 6, 2010) (noting that where an out-of-time appeal is granted pursuant to a § 2255 motion and the remaining claims are dismissed without prejudice, the claims asserted in the original § 2255 motion may be reasserted); *cf. United States v. Garza*, 624 F. App'x 208, 210-13 (5th Cir. 2015) (finding a second § 2255 petition that followed a reentry of a criminal judgment for an out-of-time appeal pursuant to a first § 2255 petition asserting, was a "second or successive petition" because it raised claims that could have been raised in the first § 2255 petition but were not).

8

2. <u>Whether Hales has shown deficient performance</u>

According to Hales, his counsel was deficient because the enhancement was applied based on the purity level of the methamphetamine in the PSR [70] which lacked sufficient indicia of reliability, and therefore his counsel should have recognized that there was insufficient evidence to support the enhancement. Mot. [131] at 4; Reply [140] at 3-4. This argument is unavailing. *See Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *United States v. Arayatanon*, 980 F.3d 444, 450, 452 (5th Cir. 2020).

In recommending that the § 2D1.1(b)(5) enhancement be applied, the PSR [70] noted that the Government's "evidence would illustrate that the methamphetamine found in [Hales's] possession had a net weight of 102.3 grams with a purity of 94.7%," and further stated that

> [a]gents with the Drug Enforcement Administration have advised that methamphetamine "Ice" with a purity level above 80% was likely imported into the United States. The agents based this conclusion on the fact that there are no known labs in the United States that can manufacture methamphetamine of this purity level. Therefore, methamphetamine of such a high purity level would have been manufactured outside the United States, and then imported into the country. The agents advised that methamphetamine may be imported in forms other than crystal, such as liquid methamphetamine, before being converted to crystal methamphetamine in the United States. The agents opined that the purity level of the methamphetamine would not change as a result of being crystallized after being transported into the country in another form. In this case, the methamphetamine (Ice) the defendant was found to be in possession of as a result of the controlled delivery had a purity of 94.7%. As such, §2D1.1(b)(5) is applicable, and the offense level is increased by two.

PSR [70] at 7.

Section 2D1.1(b)(5) applies when the Government proves by a preponderance of the evidence that the offense involved the importation of methamphetamine, even if the defendant did not know that the methamphetamine was imported. *Arayatanon*, 980 at 452. The Fifth Circuit has affirmed the application of the § 2D1.1(b)(5) importation enhancement based on statements by DEA agents that "there are no known labs in the United States that can manufacture methamphetamine of this purity level." *Id.*; *see also United States v. Ortuno*, 800 F. App'x 258, 259 (5th Cir. 2020); *United Sates v. Pineda Pineda*, 776 F. App'x 272, 273 (5th Cir. 2019). Given these cases, Hales's counsel's failure to object to the § 2D1.1(b)(5) was not an "error[] so serious that counsel was not functioning as the 'counsel' guaranteed by the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Hales contends that the DEA agents' statements in the PSR [70] were mere conclusions that lacked sufficient indicia of reliability. Reply [140] at 3-4. "[A] presentence report generally bears sufficient indicia of reliability to be considered as evidence by the trial judge in making the factual determinations required by the [G]uidelines," *United States v. Elwood*, 999 F.2d 814, 817 (5th Cir. 1993), and where the evidence in the PSR has an adequate and reliable basis, the trial court may adopt the facts within it without further inquiry until the defendant provides rebuttal evidence, *United States v. Melendez*, 57 F.4th 505, 509 (5th Cir. 2023). However, "[b]ald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR." *Elwood*, 999 F.2d at 817-18.

The Court finds that Hales's claim that the PSR's [70] statements were such conclusionary statements is without merit as this case is distinguishable from the rare circumstances where a PSR's statements have been found to lack reliability. In *Elwood*, the sole basis for the enhancement was the Government's and DEA agent's statement that "Elwood should receive a role adjustment pursuant to Section 3B1.1(c)" without any supporting facts. *Id.* at 817. Likewise, in *United States v. Patterson*, 962 F.2d 409, 414-15 (5th Cir. 1992), the PSR cited only an unsworn statement from an assistant United States attorney that the defendant "managed and supervised other persons." *Patterson*, 962 F.2d at 414-15. Here, the PSR [70] did not merely state that DEA agents believed Hales should receive the importation enhancement, but instead it relied on "the fact that there are no known labs in the United States that can manufacture methamphetamine of this purity level," which formed the basis of the agents' determination that the methamphetamine must have been imported. PSR [70] at 7. Hales himself has not offered any additional facts or evidence that he believes are necessary to make a plausible case that such labs do not exist.

Since the PSR [70] did not rely on the sort of conclusionary statements at issue in *Elwood* and *Patterson*, the finding that the methamphetamine was imported fell under the general presumption of reliability. *Elwood*, 999 F.2d at 817. Hales has not pointed to evidence that would rebut this presumption, and without such evidence, the Court could properly rely on the PSR [70]. *See Arayatanon*, 980 F.3d at 450 (noting that a defendant must demonstrate that the PSR's facts are

materially untrue, inaccurate, or unreliable). Given that the PSR [70] provided sufficient facts to support the enhancement, Hales has not demonstrated that his attorney was deficient for not objecting to it. *See id.* at 450, 452.

3. <u>Whether Hales has shown prejudice</u>

Even if Hales had shown that his counsel was deficient, his Motion [131] should nevertheless be denied because he has not shown prejudice. As discussed, without any evidence rebutting the PSR's [70] statements regarding the purity of the methamphetamine at issue and the lack of domestic labs able to produce such substances, any objection would have been overruled. *Id.* Accordingly, even if his counsel had objected, the enhancement would have still been applied.

In addition, at sentencing, the Court stated that

> [i]n the event the Court erred in calculating any of the guidelines in this case, the Court would have imposed the same sentence as a variance or nonguideline sentence based upon the offense conduct, the characteristics of the defendant and the other factors found at Title 18, United States Code, Section 3553, as the Court has discussed them here today.

Tr. [121] at 13. In light of the Court's contemporaneous statement at sentencing that Hales would have received the same sentence even if the Guidelines calculations had been different, he cannot demonstrate any prejudice because there is no reasonable probability that he would have received a lower sentence if his counsel had objected to the enhancement. *Strickland*, 466 U.S. at 695. Hales's Motion [131] should be denied.

## III. CONCLUSION

Because the Motion [131], files, and records conclusively show that Hales is entitled to no relief, the Court finds that Defendant's Motion [131] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255, should be denied without an evidentiary hearing.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Jack Benny Hales's Motion [131] under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is **DENIED** without an evidentiary hearing.

**SO ORDERED AND ADJUDGED**, this the 16th day of June, 2023.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE